2010 VT 53

## June CAMARA v. David CAMARA, Sr.

[998 A.2d 1058]

No. 09-146

¶ 1. June 2, 2010. Husband appeals from the family court's final divorce order, which incorporated a settlement agreement reached by the parties during trial. Husband argues that the court erred in: (1) enforcing the parties' agreement; and (2) ordering him to pay maintenance during the pendency of this appeal. We affirm the final divorce order, but

remand to the family court for an accounting of maintenance payments, which husband was not obligated to pay under the terms of the final order.

¶ 2. The record indicates the following. Husband and wife were married for twenty years, and they have two children together, both over the age of majority. Husband has five adult children from a previous marriage. When the parties married, husband owned and operated a fledgling slate business out of his home. During the marriage, the business prospered. Husband's sons from his first marriage entered the business, and husband began gifting stock in one of his businesses, Camara Slate, Inc., to his sons beginning in 2002. Husband owns a 35% interest in Camara Slate and a 99% interest in Vermont Unfading Green Slate, Inc.

¶ 3. Wife initiated divorce proceedings in March 2005, and a two-week divorce hearing was scheduled for March 2009. After the first week of trial, the parties engaged in settlement negotiations. On Friday morning, April 3, husband's attorney sent the following email to wife's attorney:

> We had a meeting this morning and mulled over your proposal and respond as follows:
>
> Total Settlement of $1,250,000 paid as follows:
>
> $600,000 at signing
>
> $90,000 . . . in the pension/401K transferred to [wife] by QDRO
>
> $200,000 within 60 days
>
> $360,000 (including interest) by 12/31/09
>
> We will secure the $360,000 with a real estate mortgage and we will agree to the full nisi period.

¶ 4. On Friday afternoon, wife's attorney responded to husband's attorney by email as follows: "We have accepted and I am preparing the documents. They will be with you shortly." Wife's attorney

emailed husband's attorney a draft agreement for signature later that day. Wife's attorney noted in the email that she had included a new term — specifically, a provision stating that husband agreed with the other owners of Camara Slate and Vermont Unfading Green to indemnify wife, hold her harmless, and pay her attorney's fees should she be sued by husband, the slate companies, or husband's sons. Wife's attorney later sent a second draft, adding a mutual-release paragraph and signature lines for Camara Slate and Vermont Unfading Green.

¶ 5. On Monday, April 6, husband refused to sign the agreement. Wife filed an emergency motion to enforce, and, following a hearing, the court granted wife's motion. The court found as follows. At the time husband's attorney sent his settlement offer by email, husband knew all of the terms of the offer. Husband had authorized his attorney to make the offer in full and final settlement of the divorce. Wife reviewed the offer and authorized her attorney to accept it on her behalf. Following the acceptance, wife's attorney began to draft documents. Wife and her attorney also took steps to stop trial preparation. Later that afternoon, wife's attorney informed husband's attorney that she had prepared draft documents. She also informed counsel that she had added several provisions, including a general release for the corporations to sign. Over the course of the weekend, husband knew that his offer had been accepted. He knew that wife's attorney had prepared documents and had sent them to husband's attorney. Husband saw his attorney on Saturday, and they had agreed to meet on Monday to review the documents. As noted above, husband subsequently refused to sign the agreement.

¶ 6. Applying basic principles of contract law, the court concluded that a valid, enforceable contract was formed when wife's attorney unconditionally accepted husband's offer. It found that the terms of settlement set forth in the email were comprehensive of all of the issues in the divorce. Indeed, the court observed, the specific terms of the agreement were preceded by the words "Total Settlement." The court found that husband had the ability to meet the terms of his offer, and that its implementation would create a total separation between wife and any of the family businesses. The court rejected the argument that wife's attorney had proposed a counteroffer when she sent the draft documents to husband's attorney, or that she had attempted to withdraw her unqualified acceptance of the agreement's terms. Instead, the court found that wife's attorney had merely made a proposal and requested a modification. At no time was wife's acceptance of husband's offer dependent on husband's agreement to the additional terms subsequently proposed by wife's attorney, nor were the additional terms necessary to complete the final divorce settlement. Thus, the court concluded, once wife accepted husband's offer, husband no longer had the power to withdraw, and he was bound by the agreement. In reaching its conclusion, the court also considered the factors set forth in *Willey v. Willey*, 2006 VT 106, ¶ 12, 180 Vt. 421, 912 A.2d 441 (identifying factors to consider in determining whether parties in a divorce proceeding intended to be bound by an oral agreement absent a fully executed document).

¶ 7. The court next considered whether the agreement was fair in light of the factors set forth in 15 V.S.A. § 751(b). The court acknowledged that husband had not yet presented his evidence in the divorce proceedings and allowed him to make an offer of proof as to what his evidence would show. Husband asserted that his corporate debt was greater than that identified by wife and stated that he was approaching retirement age and would no longer be able to maintain his present

income. Husband also urged the court to account for the $600,000 that he brought into the marriage. Husband maintained, moreover, that it was unfair for wife to receive cash while he was deprived of most of his liquid assets and forced to bear the risks associated with his business.

¶ 8. In reaching its decision, the court relied primarily on husband's estimates as to the value of the marital estate. Husband's calculations showed marital assets of $2,320,424, which the court recognized was a low figure. Divided equally, wife would receive $1,160,000, which was only $90,000 less than the settlement amount. Even taking into account the $600,000 that husband allegedly brought to the marriage, the court found that the amount awarded to wife was not excessive, particularly given that wife would be receiving no maintenance. The court rejected husband's assertion that it was unfair for him to bear all of the business risks. It found that husband had the skills and ability to manage such risks, while wife plainly did not. It also found that wife would have to become a minority shareholder to share these risks, which would be an untenable situation for everyone. For these and other reasons, the court determined that the agreement was equitable, and it incorporated the agreement into the final divorce order. Husband appealed.

¶ 9. Husband first argues, somewhat confusingly, that the parties did not enter into a "preliminary" agreement. He also asserts that no final settlement agreement was reached, and that the court misapplied *Willey* in reaching its conclusion. Assuming an agreement exists, husband argues that the court should have found it inequitable. He maintains that the court refused to hear evidence regarding the financial consequences of enforcing the agreement and that it misunderstood the nature of his property tax obligations and the income tax liability he

would incur if forced to liquidate his holdings. He also contends that his right to present evidence was improperly truncated.

¶ 10. On review, we will uphold the family court's findings of fact unless clearly erroneous, and we will uphold its conclusions where supported by the findings. *Willey*, 2006 VT 106, ¶ 11; *Town of Rutland v. City of Rutland*, 170 Vt. 87, 90, 743 A.2d 585, 587 (1999) (noting that "existence of an agreement is ordinarily a question of fact for the trier"). The family court has discretion in determining if a settlement agreement is fair and equitable, and "we review its decision to reject or accept a stipulation under an abuse-of-discretion standard." *Pouech v. Pouech*, 2006 VT 40, ¶ 23, 180 Vt. 1, 904 A.2d 70.

¶ 11. Husband's arguments are without merit. As an initial matter, no party argued, nor did the family court find, that the parties entered into a "preliminary" agreement. Instead, the court found that the parties had reached a final and binding agreement that resolved all issues in their divorce. The application of basic principles of contract law compels this conclusion. As the court found, husband made an offer, and the offer contained all the terms necessary to constitute a full and final settlement of the divorce proceedings. See generally Restatement (Second) of Contracts § 24 (1981) (defining "offer"). Wife unconditionally accepted husband's offer. See *id.* § 50 (defining "acceptance of offer"); see also *Rule v. Tobin*, 168 Vt. 166, 171, 719 A.2d 869, 872 (1998) ("Under contract law, an acceptance of an offer must be unconditional."). When wife accepted husband's offer, a valid, enforceable contract was formed, and husband was bound by its terms. See, e.g., *Starr Farm Beach Campowners Ass'n v. Boylan*, 174 Vt. 503, 505, 811 A.2d 155, 158 (2002) (mem.) ("An enforceable contract must demonstrate a meeting of the minds of the parties: an offer by one of them and an acceptance of such offer by the other.").

¶ 12. None of husband's arguments undermine this conclusion. Husband maintains that the family court misapplied *Willey* in reaching its decision. We disagree. *Willey* involved the enforcement of an oral settlement agreement between a husband and wife during their divorce trial. To determine if the parties intended to be bound by their oral agreement, the court considered the following factors: (1) whether either party expressly reserved the right not to be bound until the agreement was written down and executed; (2) whether either party had partially performed the contract; (3) whether the parties agreed upon all substantive terms; and (4) whether the agreement was of a sort typically committed to writing. 2006 VT 106, ¶ 12. Husband argues that a proper evaluation of these factors in this case shows that the parties did not intend to be bound by their agreement.

¶ 13. Husband essentially asks this Court to reweigh the evidence. He asserts, for example, that the parties here did not agree on all substantive terms. As support for this assertion, he points to the attempt by wife's attorney to include indemnification and mutual release provisions in a draft of the written agreement. The family court considered and rejected this argument. It found that this was merely an attempt to modify the parties' existing contract; it was not a counteroffer. We agree. As previously discussed, wife had already unconditionally accepted husband's proposed terms. Wife never attempted to withdraw her earlier acceptance of husband's offer, nor was her acceptance ever conditioned on husband's agreement to the inclusion of the indemnification provision. See Restatement (Second) of Contracts § 61 ("An acceptance which requests a change or addition to the terms of the offer is not thereby invalidated unless the acceptance is made to depend on an assent to the changed or added terms."); see also *Okemo Mountain, Inc. v. Okemo Trailside Condos.,*

*Inc.,* 139 Vt. 433, 435, 431 A.2d 457, 459 (1981) ("It has long been the law in Vermont and elsewhere that an acceptance of an offer, to be good, must in every respect meet and correspond with the offer. An acceptance on terms varying from those proposed is, in effect, a counter proposal, and is not binding until it is itself accepted." (quotation omitted)).

¶ 14. Husband also argues that wife's decision to stop trial preparation does not constitute partial performance of that agreement, as the trial court found. As stated above, the overarching question in *Willey* is whether the parties intended to be bound by their oral agreement. Certainly, the actions of wife's attorney in stopping trial preparation demonstrated her belief that a binding contract existed. But even if the court's statement was error, it was harmless. Wife was not trying to enforce an oral agreement, nor was she relying on partial performance to render the agreement enforceable. Cf. *Willey,* 2006 VT 106, ¶ 16 (finding partial performance where one party provided payment to the other as required by the agreement, and party's check was marked "Toward Settlement," and citing similar cases where partial performance by one party rendered oral agreement enforceable). Both the offer and acceptance here were in writing, and the court did not err in finding that the parties intended to be bound — and that they were in fact bound — by their agreement. See *Bixler v. Bullard,* 172 Vt. 53, 58, 769 A.2d 690, 694 (2001) (whether parties intended to be bound by agreement is question of fact, and "[t]o discern that intent[,] a court must look to the words and deeds of the parties which constitute objective signs in a given set of circumstances" (quotation omitted)).

¶ 15. The court similarly did not err in finding the agreement equitable. Husband was in the difficult position of arguing that a settlement he proposed was so inequitable to him that it had to be set

aside. In reaching its decision, the court considered all of the factors set forth in 15 V.S.A. § 751(b), including the fact that the parties had a lengthy marriage, and that husband had a much greater ability than wife to generate income and acquire assets. See *Pouech*, 2006 VT 40, ¶ 23 (in deciding whether to accept stipulation in divorce case, family court should consider if agreement is fair and equitable in light of standards and factors set forth in divorce statutes). The court also considered that wife would be entitled to a large maintenance award absent the parties' agreement. If wife's presettlement request for maintenance had been granted, the court explained, the total over a five-year period would be $275,000. When that sum was added to half of the value of the marital estate — using husband's figures and deducting the $600,000 that he brought to the marriage — the result was only $100,000 less than the settlement terms, without taking into account attorney's fees and the expenses of litigation. This result is equitable.

¶ 16. The court provided husband ample opportunity, moreover, to present evidence regarding the financial consequences of enforcing the agreement. Husband did not argue to the trial court that he would have to liquidate all of his assets to pay wife the agreed-upon sum. He did not, in his offer of proof to the court, establish any "liquidation values" of the parties' assets as compared to the fair market value of these assets, nor did he request additional time to develop such evidence. Instead, the record shows, and the court found, that husband had ample cash on hand, owned numerous parcels of real estate, and had little debt. Certainly, it is a reasonable inference that, given these facts, husband also had significant borrowing ability. There is evidence to support the court's finding that husband was able to meet the terms of his own settlement proposal, and it appears from the record that he has in fact done so. The

court did not withhold its discretion in reaching its decision, as husband contends. To the contrary, it considered and rejected husband's position that the enforcement of the agreement was unfair. The court provided thorough grounds for its decision based on the evidence presented below, and we will not disturb the court's assessment of the weight of the evidence on appeal. *Cabot v. Cabot*, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997) ("As the trier of fact, it [is] the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence.").

¶ 17. Finally, we turn to husband's argument regarding maintenance. The record indicates that, following the court's on-the-record decision to enforce the settlement agreement, wife moved for immediate execution of the judgment. She later requested that husband continue to pay maintenance during the appeal. The court denied the request for immediate execution of the judgment, but granted wife's motion regarding maintenance. Citing 15 V.S.A. § 594a, the court found that there was no final judgment because an appeal was pending, and that the temporary spousal maintenance order would therefore continue until the judgment became final. The court later denied husband's request to terminate the maintenance payments, reasoning that husband would suffer no prejudice from its decision because, even if this Court determined that spousal maintenance should have been terminated or not paid, the amounts paid could be credited toward husband's other remaining financial obligations.

¶ 18. Section 594a provides that a party to a marriage may apply for temporary relief at any time following the separation of the parties, and the court may make orders "pending final hearing and further order of the court." The purpose of temporary maintenance is to maintain the status quo between the parties while the

dissolution proceeding is pending, and the obvious "intent of the statute is that the temporary order will be replaced by a final order." *Chaker v. Chaker*, 155 Vt. 20, 29, 581 A.2d 737, 742 (1990). "This is consistent with the general law that temporary maintenance orders merge into, and are superseded by, the final order." *Id.*

¶ 19. Husband's temporary maintenance obligation in this case terminated with the entry of the final divorce order, which contained no maintenance provision. The court erred in finding that there was no final order and in relying on that ground to continue husband's obligation under the temporary maintenance order. The court's divorce order was plainly final in the sense that it resolved all outstanding issues, although the order was subject to appeal. Indeed, a final order was required for this Court to assume jurisdiction over husband's appeal. See, e.g., *Huddleston v. Univ. of Vt.*, 168 Vt. 249, 251, 719 A.2d 415, 417 (1998) (noting that final judgment is a prerequisite to appellate jurisdiction). The court failed to identify appropriate grounds for continuing husband's maintenance obligation, and we therefore remand to the family court to determine the sum that should be credited to husband or repaid by wife, assuming that husband has satisfied his financial obligations under the terms of the final divorce order.[*]

*The final divorce order is affirmed, and the case is remanded to the family court to allow husband to be reimbursed or credited for the maintenance payments made to wife during the pendency of this appeal.*

Motion for reargument denied June 23, 2010.

_____
[*] Although we reject the ground offered by the family court for its decision, we note that the family court does have authority to

stay the maintenance portion of a final divorce order (or as here, an award of no maintenance) during the pendency of appeal. See V.R.F.P. 12(a)(2); see also Reporter's Notes, V.R.F.P. 12, 2001 amendment (explaining that the party who had been receiving maintenance that is discontinued or reduced by subsequent order "has the burden of moving for an order staying the portion of the subsequent order that discontinues or reduces support under the existing order," and that because "the outcome may have serious financial consequences for the parties, the court should hold hearings on such motions").