2014 VT 66

## Andrea Joseph v. Neil Joseph

[101 A.3d 900]

No. 13-240

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.

Opinion Filed July 18, 2014

*Melvin D. Fink*, Ludlow, for Plaintiff-Appellant.

*Matthew T. Birmingham* of *Birmingham & Moore, P.C.*, Ludlow, for Defendant-Appellee.

¶ 1. **Robinson, J.** This case calls upon us to determine the effect of an arrearage accrued under a temporary order following a final divorce decree when the arrearage was not incorporated into the final order or otherwise reduced to judgment. Wife Andrea Joseph appeals the family court's denial of her motion to enforce husband Neil Joseph's obligations under a temporary divorce order after a final divorce decree issued. We affirm.

¶ 2. In December 2011, wife filed for divorce after twenty-three years of marriage to husband. In October 2012, the parties entered into a stipulation agreeing to equally divide certain joint

Morgan Stanley accounts. They also agreed in the stipulation that husband would continue to pay, out of the portion of the joint accounts designated to him, "those obligations that were being paid prior to the divorce action, which would include but not be limited to: mortgages, taxes, insurance and utilities for the properties that are owned by either one or both of the parties." The trial court approved the stipulation and entered it as a court order.

¶ 3. The trial court held a two-day contested divorce hearing in March 2013. Wife concedes that in the context of the final divorce hearing she did not raise any questions about whether husband fulfilled his obligations under the October 2012 stipulation, and the question was not in any way addressed at the final divorce hearing. The court issued a final divorce decree on April 9, 2013 that distributed the marital estate nearly equally between wife and husband. Neither party appealed the final divorce decree nor sought any relief from the judgment.

¶ 4. On May 10, 2013, wife filed a motion for enforcement and contempt with respect to the October 2012 stipulated order, alleging that husband had failed to make some of the required payments during the pendency of the divorce and up to the entry of the final divorce decree. Wife alleged that she made a number of payments during the period between the trial court's acceptance of the stipulation and the issuance of the final decree for which she was not reimbursed, including mortgage, utility, and insurance payments. She also claimed that some obligations under the stipulation remained unpaid altogether, including insurance, utility payments, and property taxes on the marital property. Wife requested that the trial court take an accounting of husband's unpaid obligations, order payment, and find husband in contempt of the temporary order.

¶ 5. The trial court denied wife's motion, concluding that it lacked subject matter jurisdiction to enforce a temporary order after the final divorce decree became final. The trial court, citing this Court's decisions in *Chaker v. Chaker*, 155 Vt. 20, 581 A.2d 737 (1990), and *Camara v. Camara*, 2010 VT 53, 188 Vt. 566, 998 A.2d 1058 (mem.), reasoned that once the final divorce decree issued, the temporary order "merged into it and was extinguished." Wife appealed to this Court.

¶ 6. Neither party disputes that prospective obligations under the stipulation are superseded by the final order. The issue on

appeal is whether arrearages accrued under a temporary order, which were not reduced to a separate judgment and were not raised or addressed at the final divorce hearing, are enforceable after the final hearing. Because this is a question of law, our review is nondeferential and plenary. *Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica*, 2005 VT 16, ¶ 10, 178 Vt. 35, 869 A.2d 145.

¶ 7. Wife acknowledges that a final divorce decree may extinguish prospective obligations based on a temporary order, but argues that the final order cannot extinguish obligations already accrued while the temporary order was in effect. She further argues that obligations accruing through the temporary period cannot be fully litigated at the final hearing because arrearages may accrue while the temporary order continues to be in force between the final hearing and the court's issuance of the final divorce decree. Husband responds that he relied on the final hearing to resolve all issues as to property, debt, and other assets and that wife is now precluded from seeking enforcement of the temporary order.

¶ 8. We have not previously addressed the central issue in this case, and the two decisions featured most prominently in the parties' briefs and the trial court's opinion provide little guidance. In *Chaker*, the trial court had issued a temporary spousal maintenance order in September 1984. It issued a final spousal maintenance order in a different amount, as well as an order for arrearages that had accrued under the temporary order, in May 1985. This Court subsequently reversed that spousal maintenance order. 155 Vt. at 23, 581 A.2d at 739. On remand, in June 1988 the trial court issued a new spousal maintenance order for yet a different amount, and calculated the arrearage due for the period between the 1985 final order that was reversed by this Court and the 1988 actual final order. In calculating the arrearage due, the trial court had to determine which spousal maintenance obligation applied during the period in question. The trial court reasoned that the initial final order was no longer in effect because it was reversed on appeal and thus calculated spousal maintenance arrearages based on the 1984 temporary order that had preceded that 1985 initial final order. On appeal, this Court agreed that the trial court's analysis was "consistent with the statute and the proper effect of a temporary order only if the final order became effective with respect to maintenance on the day it was issued [in

June 1988]." *Id.* at 29, 581 A.2d at 742. However, the trial court had the discretion to make its 1988 spousal maintenance order retroactive at least to the date of the initial hearing; because it had not exercised its discretion to determine the effective date of the permanent maintenance award, and thus the termination date of the temporary award, we remanded to the trial court for a hearing on the question. *Id.* at 30-31, 31 n.2, 581 A.2d at 742-43, 743 n.2.

¶ 9. Although two statements in *Chaker* highlight that case's potential relevance to this case, ultimately the decision provides little relevant guidance. First, we pointed out that the applicable statute authorizes a court to award temporary maintenance "pending final hearing and further order of the court." *Id.* at 29, 581 A.2d at 742 (citing 15 V.S.A. § 594a). We noted that this expectation that a temporary order will be replaced by a final order "is consistent with the general law that temporary maintenance orders merge into, and are superseded by, the final order." *Id.* These statements reinforce the uncontroversial principle that an ongoing spousal maintenance obligation in a temporary order is superseded by a final order, but do not squarely address the question here: whether arrearages accrued pursuant to the temporary order and not reduced to judgment survive a final order. Second, we expressly declined to consider whether the court "could establish a retroactive maintenance award covering the period for which the temporary award was in effect and superseding that award" and noted that neither party challenged the original determination of the arrearage under the temporary order due through May 1985. *Id.* at 30 n.1, 581 A.2d at 743 n.1. The question of whether a court can retroactively modify a temporary order and arrearage accrued thereunder — expressly left open in *Chaker* — is closely related to the question before us in this case.

¶ 10. In *Camara*, we addressed a wife's request that the husband continue to pay spousal maintenance under a temporary order during the pendency of the appeal of the final divorce decree. We explained that the purpose of temporary maintenance is to maintain the status quo between the parties while the divorce is pending and cited *Chaker* for the proposition that a temporary order is replaced by a final order. *Camara*, 2010 VT 53, ¶ 18. We concluded that the temporary maintenance obligation terminated with the entry of the final decree, which did not

provide for maintenance. *Id.* ¶¶ 18-19. That case did not involve accrued arrearages under the temporary order, but rather the prospective enforcement of a temporary maintenance provision while an appeal of the final order was pending. Like our decision in *Chaker*, our holding in *Camara* relied on the general principle that temporary orders merge into, and are superseded by, the final divorce decree; like *Chaker*, *Camara* does not purport to address the post-final divorce status of an arrearage accrued during the pendency of a temporary order when that arrearage was not reduced to a separate judgment, raised at the final hearing or explicitly addressed in the final decree.

¶ 11. The applicable statutes likewise provide limited guidance. As noted above, the statute authorizing temporary orders contemplates that a temporary order will be replaced by a final order, but does not purport to address the question of what happens to an arrearage accrued under a temporary order. 15 V.S.A. § 594a. Parties can reduce arrearages accrued pursuant to temporary orders for maintenance, child support or suit money to judgment pursuant to 15 V.S.A. § 606(a), (b). This statute does not apply to property awards.

¶ 12. ■ The statute governing property division, *id.* § 751, gives the court broad authority in dividing marital property with respect to both the factors the court may consider in its distribution and the property subject to the court's jurisdiction. *Id.* § 751(b) (allowing court to consider "all relevant factors," including twelve statutory factors, when making a property settlement); *id.* § 751(a) ("All property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court."). Moreover, a court's property distribution is generally not subject to modification absent certain limited circumstances. *Boisselle v. Boisselle*, 162 Vt. 240, 242, 648 A.2d 388, 389 (1994) (concluding that "Vermont law is clear that the court cannot modify the property disposition aspects of a divorce decree absent circumstances, such as fraud or coercion, that would warrant relief from a judgment generally"). Section 751 does not expressly state that a court's property division order extinguishes all outstanding property claims between the parties arising from the marriage, but it does evince a legislative intent that the scope of the court's order with respect to property division is both broad and comprehensive.

¶ 13. Other state courts are divided on the question of whether a final divorce decree extinguishes a party's right to collect an arrearage accrued under a temporary order that was not reduced to judgment before or in the final order. Some courts have held that accumulated arrearages under a temporary order are enforceable even after a final decree issues. See, e.g., *Newton v. Newton*, 232 S.E.2d 557, 558 (Ga. 1977) ("Any arrearage which accrued under the temporary order prior to rendition of the final decree may properly be the subject of contempt proceedings initiated subsequent to the final decree."); *Lewis v. Lewis*, 586 So. 2d 740, 742 (Miss. 1991) ("[P]ayments that become due and payable under a temporary order may be reduced to judgment after entry of the final decree, despite the failure of that decree to expressly preserve them."); *Ex parte Shaver*, 597 S.W.2d 498, 500 (Tex. App. 1980) ("[R]endition of the final divorce decree does not in itself nullify the temporary order with respect to payments past due. It supersedes the temporary order with respect to future support, but the obligation for past support, as fixed by the temporary order, continues unless modified by the provisions of the divorce decree or satisfied by payment.").

¶ 14. Others have concluded that the issuance of a final decree terminates any rights acquired under a temporary order, including arrearages accrued during the pendency of an order. See, e.g., *Maddox v. Maddox*, 160 So. 2d 481, 482 (Ala. 1964) ("[A] final decree of divorce has the effect of rendering unenforceable the right to accrued installments of alimony pendente lite, unless the right to such installments are saved by said final decree."); *Krogen v. Collins*, 907 P.2d 909, 912 (Kan. Ct. App. 1995) ("[A] final order containing no award of alimony impliedly discharges accrued arrearages on temporary alimony."); *Colom v. Colom*, 389 N.E.2d 856, 858 (Ohio 1979) ("It is our view that not only should the interim orders be merged within the final judgment, but the right of action or enforcement of such interim orders should not be extended beyond the final decree unless specifically reduced to judgment or referred to within the decree."); see also *Skinner v. Skinner*, 579 So. 2d 358, 359 (Fla. Dist. Ct. App. 1991) (holding that interlocutory order directing husband to pay wife's medical bill did not survive final dissolution judgment that was silent as to the unpaid bill).

¶ 15. ▮ After reviewing authorities on both sides of this question, we agree with those courts that have held that a final

decree extinguishes the right to enforce an arrearage arising under a temporary order that has not been included in the final order or otherwise reduced to judgment. This approach "serves the salutary purpose of consolidating the adjudicated rights and duties of the parties into a single document, and prevents the resurrection of the interlocutory matters after the [final] decree." *Colom*, 389 N.E.2d at 858.

¶ 16. ■ ■ We recognize the arguments against such an approach. See *Lewis*, 586 So. 2d at 742 ("'A rule that denies recovery of accrued unpaid obligations under a temporary order unless they are expressly preserved by the final order is entirely senseless . . . [because] it rewards the recalcitrant husband for non-compliance with the court's order by excusing him from payment of arrears.'" (quoting *Druce v. Druce*, 738 P.2d 633, 634 (Utah 1987)). However, the risk of an obligor escaping liability for failing to comply with a temporary order is significantly mitigated by the fact that a party seeking to preserve a right accrued under a temporary order may seek to include it in the final order or, in cases in which 15 V.S.A. § 606(a) applies, to reduce the arrearage to judgment before the final decree. *Maddox*, 160 So. 2d at 482 (explaining right to arrearages accrued prior to entry of the final decree can be "saved by said final decree"); *Britven v. Britven*, 145 N.W.2d 450, 456 (Iowa 1966) ("[A]ccrued installments of temporary alimony previously allowed in a divorce action may be saved by a judgment for the total sum then owing as a part of the final decree of divorce."); *Colom*, 389 N.E.2d at 858 (stating arrearages can be recovered if reduced to judgment or referred to within the final decree). A trial court's failure to incorporate an accrued arrearage into a final judgment, if the issue was raised, would be subject to review on appeal. As the Connecticut Appellate Court recently explained:

> [W]here a final decree of divorce has been rendered, any orders regarding pendente lite alimony are merged in the final decree and thereafter, no independent action for contempt based on the temporary alimony order can be properly brought. Review may be made, however, of that part of a final order which fails to . . . incorporate an accumulated arrearage of pendente lite alimony . . . . Indeed, it would be error for a trial court . . . to fail to incorporate an accumulated arrearage of pendente lite alimony in a final order granting dissolution.

*Clark v. Clark*, 13 A.3d 682, 688 (Conn. App. Ct. 2011) (quotation omitted).

¶ 17. ■ Moreover, the countervailing considerations are substantial. The resolution of all the issues and claims between the parties to a divorce in one proceeding will add necessary predictability and clarity to a process that can all too often be complex and acrimonious. Just as modification of property distribution is disfavored in order to preserve finality, so too must piecemeal litigation of issues arising out of the marriage be avoided. We have recognized that "[t]here is no area of law requiring more finality and stability than family law" and that finality is of paramount importance in the divorce context. *Arbuckle v. Ciccotelli*, 2004 VT 68, ¶ 11, 177 Vt. 104, 857 A.2d 324 (quotation omitted). Requiring parties to litigate arrearages by the close of evidence at the final divorce hearing will promote such finality, and will avoid the risk that a party who believes the other has failed to comply with a temporary order will sandbag the other party by remaining silent about the issue at the final hearing, only to raise the matter after the final order.

¶ 18. ■ If arrearages under a temporary order accrue prior to the final hearing unbeknownst to the party who would seek enforcement — for instance unpaid property taxes may not become evident until some time after the final decree is entered — the newly discovered evidence may well support a claim for relief from the final divorce order. See V.R.C.P. 60(b) (court may relieve a party from final judgment on account of newly discovered evidence which could not by due diligence have been discovered in time to move for a new trial); V.R.F.P. 4(a)(1) (rules of civil procedure apply in actions for divorce).

¶ 19. ■ In this case, wife seeks to enforce the terms of a temporary order. She concedes that she did not raise the issue of whether husband had been fulfilling his obligations under the stipulation at the final hearing, and did not present any evidence on the subject.[*] The record reflects that wife made no mention of these arrearages, or of the stipulations, in her requests to find prior to the hearing or the supplemental requests to find filed with the court's permission after the hearing. To the extent that

---

[*] Wife indicated, pursuant to Vermont Rule of Appellate Procedure 10(b)(1), that a transcript was not necessary for this appeal and we have not reviewed one.

wife now seeks to enforce obligations that were, to her knowledge, unsatisfied at the time of the final divorce hearing, she cannot escape the effect of the final divorce order in extinguishing those debts.

¶ 20. We agree with the trial court's analysis as to the impact of the final divorce order on the allegedly unsatisfied obligations pursuant to the temporary order, and affirm.

*Affirmed.*