Vermont Superior Court
Filed 09/03/25
Caledonia Unit

VERMONT SUPERIOR COURT
Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-01367

| Katherine Cousins v. David Cousins |
| --- |

# ENTRY REGARDING MOTION

Title:      Motion to Enforce Settlement Agreement (Motion: 1)
Filer:      Kevin Lumpkin
Filed Date:    May 30, 2025

In this partition action, the parties—who are siblings—are co-owners of a property in St. Johnsbury. Currently pending before the court is plaintiff's motion to enforce a settlement agreement reached between the parties' counsel over email. Defendant opposes the motion. For the reasons set forth below, the motion is denied.

## Background

This action follows a related dispute that was settled in mediation in November 2024. Under that settlement, defendant David Cousins was to move out of the St. Johnsbury property, which was then to be sold for fair market value and the net proceeds were to be divided equally between the parties on closing.

David did not move out as agreed, and plaintiff Katherine Cousins filed the complaint in this action on March 27, 2025, seeking partition and pleading several other claims. Defendant thereafter filed an answer and counterclaim seeking injunctive relief requiring Katherine to repair, fix, and list the St. Johnsbury property for sale in accordance with the November 2024 settlement agreement.

On May 5, 2025, David's counsel Hal Stevens emailed Katherine's counsel Kevin Lumpkin, stating, "David has had it with the whole dispute with Kate. He will agree to quit claim the property to for $10 for a stipulation of dismissal with prejudice and for each party to bear their own costs with general releases." Pl.'s Mot., Exh. 1. Attorney Lumpkin responded on May 6, "This offer of settlement is accepted. I will work on drawing up all of the appropriate paperwork." *Id.* Attorney Stevens replied the following day, "Thanks Kevin." *Id.*

Attorney Lumpkin thereafter circulated a draft settlement agreement on May 13 that provided for David to vacate the property, to make several warranties and

representations concerning the condition of the property, and for the parties to mutually release their claims against each other.

On May 17, Attorney Stevens emailed Attorney Lumpkin stating that "David would like to know what the realtor is going to list the property for price, before signing anything." Pl.'s Exh. 4. Attorney Lumpkin responded the same day, "I'm not sure what this means. We have settled the case with David agreeing to quit claim the property to Katie for ten dollars and mutual general releases. That is the agreement I prepared and sent to you earlier this week. The identity of the realtor was not a term, nor would it matter since Kate will own the property and can do whatever she wants with it." *Id.*

Several more emails were exchanged between counsel over the ensuing days. Attorney Stevens eventually indicated that David objected to the agreement drafted by Attorney Lumpkin insofar as it required David to make representations and warranties concerning the property. Attorney Stevens characterized the draft agreement as a counterproposal and indicated that David's offer was withdrawn until he learned the price for which Katherine was planning to list the property. On May 21, Attorney Stevens followed up indicating that "David now offers to quitclaim his interest in the St. Johnsbury property for $25,000 and a full release of all claims of Kate and dismissal of the partition action." Pl.'s Mot., Exh. 3. In response, Attorney Lumpkin stated that Katherine would be moving to enforce the May 6 email agreement.

## Analysis

[W]hether the series of e-mails constituted an enforceable contract or—instead—a preliminary agreement depends on two factors: the parties' intent to be bound and the definiteness of terms in the communications between the parties." *Miller v. Flegenheimer*, 2016 VT 125, ¶ 13, 203 Vt. 620.

The "intent to be bound" is determined using an objective test requiring that such intent be "established by some unequivocal act or acts." *Id.*, 2016 VT 125, ¶ 15 (citation omitting). In the absence of a fully executed document, the court looks to the following factors:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Catamount Slate Prods. v. Sheldon*, 2003 VT 112, ¶ 17 (quoting *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)).

Here, there was no express reservation of the right not to be bound. Rather, Attorney Stevens made an offer on behalf of David on May 5 that David "will agree to quit

claim the property to for $10 for a stipulation of dismissal with prejudice and for each party to bear their own costs with general releases." Attorney Lumpkin accepted the offer on behalf of Katherine on May 6 without reservation and indicated he would "work on drawing up all of the appropriate paperwork." Neither party indicated any intention not to be bound by this e-mail agreement. The first factor accordingly weighs in favor of enforcement.

The parties agree that there has not been partial performance of the agreement. The second factor accordingly weighs against enforcement.

With respect to the third factor, the question is "whether there was literally nothing left to negotiate." *See Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 831 (2d Cir. 2019) (quoting *Winston*, 777 F.2d at 82). That is not so here. As the communications regarding Attorney Lumpkin's draft agreement reflect, the parties did not agree to the terms under which David would vacate the property. Even assuming that Katherine now agrees to a transfer of the property in "as is" condition without David making any warranties or representations, the May 6 agreement does not address when David will move out, how or when the quitclaim deed would be provided, what the parties' rights and obligations are with respect to personal items in the home, and other seemingly necessary details. Notably, the parties' November 2024 agreement spelled out many of these terms. *See* Defs.' Opp., Exh. A. The case is accordingly distinguishable from *Corfman v. Hooker Mountain Farm L3C*, No. 408-12-20 Wncv, 2021 WL 418904 (June 4, 2021) (Bent, J.), upon which Katherine relies, and which involved a single $50,000 payment in exchange for a release of claims, with no transfer of real estate. The third factor weighs against enforcement.

Finally, the fourth factor asks whether the agreement at issue is the type of contract that is usually committed to writing. This factor looks first to "whether the agreement at issue is of a type that is "usually committed to writing" and, second, to "whether the agreement is so complex that the parties could not reasonably have expected to be bound without a writing." *Willey v. Willey*, 2006 VT 106, ¶ 18, 180 Vt. 421. Although not particularly complex, the agreement here involves a contract for interest in land between adversaries in litigation following a previous failed settlement attempt. "[P]rudence strongly suggests that" the parties' agreement be reduced to formal executed settlement agreement "to avoid still further litigation." *See Catamount Slate Prods.*, 2003 VT 112, ¶ 24, 176 Vt. 158 (quoting *Winston*, 777 F.2d. at 83). The fourth factor weighs against enforcement.

Based on the foregoing, the court concludes that the *Catamount Products / Winston* factors weigh against enforcing counsels' May 6 email agreement in this case. The motion to enforce is accordingly denied.

## Order

The motion to enforce the settlement agreement is DENIED. The parties shall submit a stipulated amended pretrial schedule, or their respective proposals, within 14 days from the date of this order.

Electronically signed on: 9/3/2025 pursuant to V.R.E.F. 9(d)

_____

Benjamin D. Battles
Superior Court Judge