2011 VT 110

## Michael Chickanosky v. Margaret Chickanosky

[35 A.3d 132]

No. 10-385

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed September 22, 2011

436

438

*James C. Foley, Jr.* of *Deppman & Foley, P.C.*, Middlebury, for Plaintiff-Appellee.

*Lisa M. Werner* of *Clark, Werner & Flynn, P.C.*, Burlington, for Defendant-Appellant.

¶ 1. **Johnson, J.** Mother appeals from a family court order granting father sole physical and legal rights and responsibilities of their child. She contends that: (1) the family court's findings and legal conclusions are inconsistent with the evidence presented at trial and are based on inadmissible evidence; (2) the family court erred in failing to consider her argument that father's reason for moving should be considered when deciding whether there has been a change in circumstance, such that the co-parent's rights to physical custody are reduced; and (3) the family court erred in failing to consider her argument that mother should maintain physical custody when father decided to move and mother had the majority of physical custody. We affirm.

¶ 2. Mother and father were divorced in 2005. Pursuant to the original divorce order, the parties shared legal and physical rights and responsibilities in their daughter, who was five years old at the time of the judgment. Following their divorce, mother and father generally shared time with daughter: she was with mother for four overnights per week and with father for three. During the school year, she was with father from Wednesday to Saturday and with mother from Saturday to Wednesday. During the summer, she was with father from Friday to Monday and with mother from Monday to Friday. They also co-parented daughter during this time. Nonetheless, mother and father have had an especially contentious post-divorce relationship. Both parents have new part-

ners and children, and this has caused additional tension in their relationship. Daughter's participation in extracurricular activities caused particular difficulties.

¶ 3. As a result of the parties' disputes, father moved to modify parental rights and responsibilities in January 2008. Following a five-day hearing, the court issued a written order in January 2009 awarding primary legal responsibility to father. The court found that because parents could not agree, daughter was being denied the opportunity to participate in extracurricular activities she had previously enjoyed. In addition, the parties could not agree on a counselor or dentist for daughter, whether she should see an orthodontist, and how her religious upbringing should occur. Overall, the court found that daughter's welfare was negatively affected by the parties' inability to cooperate or reach agreements.

¶ 4. Based on its findings, the court concluded that it had become necessary to grant primary legal responsibility of daughter to one parent. It further concluded that it was in daughter's best interest that father be awarded primary responsibility with certain "caveats," including that father not remove daughter from her current school unless the parties agreed, nor change her current church membership without mother's approval. The court specifically ordered that father would be the primary decision-maker for nonschool-related extracurricular activities. At the same time, the court denied father's request for primary physical responsibility of daughter, concluding that it would be traumatic for daughter if her residential schedule were altered. Given the parties' co-parenting arrangement, a change of custody was not necessary to solve the dispute before the court.

¶ 5. Nevertheless, mother appealed the family court order awarding father primary decision making responsibility over daughter's extracurricular activities, as well as a subsequent order denying her motion to modify, claiming that the orders impermissibly infringed on her shared physical rights and responsibilities. We affirmed both family court decisions in *Chickanosky v. Chickanosky*, Nos. 2009-094 & 2009-444 (Vt. May 21, 2010) (unpub. mem.), http://vermontjudiciary.org/d-upeo/eo09-094.pdf.

¶ 6. In October 2009, while mother's appeals were pending before this Court, father again petitioned the family court for primary physical responsibility of daughter because of a planned relocation to Missouri. He asserted that the relocation was a real, substantial, and material change in circumstances warranting a

change in the award of physical rights and responsibilities. Father further asserted that it would be in daughter's best interest that he be awarded primary physical responsibility so that she could move with him and his wife to Missouri and that mother be awarded reasonable parent-child contact. Mother contended that it would be in daughter's best interest to remain with her in Vermont.

¶ 7. Following a four-day hearing, the court issued a written decision in July 2010. The court made extensive findings, relying on a court-ordered forensic evaluation by Dr. Joseph Hasazi, its January 2009 order and related findings and conclusions of law, and the testimony of multiple witnesses. The court found that father's primary motivation for moving to Missouri was to be closer to his wife's family. Other factors influencing father's decision to move included Missouri's lower cost of living, the tense situation with mother and its impact on daughter, and the cost of the ongoing litigation regarding their daughter.

¶ 8. The court found that mother continued to make it "very difficult for [daughter] to be able to truly consider [father] as a co-parent," and that mother's "tendency to fail to see [father] as an equal co-parent has continued since the time of the [January 2009] order, and she has directly, or indirectly, continued to instill this belief in [their daughter]." In particular, the court found that mother had criticized father's choices concerning daughter's extracurricular activities after the court granted him decision-making authority in this area. Similarly, the court found that mother had not set aside her anger towards father's wife, even though doing so would benefit daughter, who had bonded with father's wife. The court noted that things had not improved in this regard since its January 2009 decision. The court also found that mother had "a history of interfering" with the daughter's schooling. Indeed, the court found that mother was "not as good as [father] as far as giving [daughter] space to learn and develop on her own."

¶ 9. In contrast, the court found that father was "much more likely to make decisions that [were] based on [daughter's] best interest [and] not influenced by his feelings for [mother]." Indeed, the court found that father was much better at keeping "adult issues" away from the child. The court also found that father had "a better understanding of the boundaries between adult and child and [could] provide [daughter] with better guidance."

¶ 10. The court found, too, that daughter had strong ties to her community in Monkton, where mother lived, and that she was closer to her Vermont friends and relatives than to her relatives in Missouri. The court found in this regard that a move from her Monkton home would "cause [her] some emotional upset."

¶ 11. Relying on our decision in *Hawkes v. Spence*, 2005 VT 57, 178 Vt. 161, 878 A.2d 273, the court concluded that father met his burden of proving that his relocation was a substantial change in material circumstances, allowing modification of the parties' custody arrangement. The court highlighted the parties' co-parenting of daughter, the permanence and distance of father's relocation, and the lack of alternative visitation arrangements that could approximate their current schedule.

¶ 12. Having concluded that father met his threshold burden of proving changed circumstances, the court then granted father's motion to modify based on the best interests of the child and the factors outlined in 15 V.S.A. § 665(b). It determined that, based on its findings, the majority of the factors favored father and concluded that it was in daughter's best interest for father to be awarded primary legal and physical rights and responsibilities. Accordingly, the court granted father primary legal and physical responsibility of daughter subject to mother's right of parent-child contact. Mother subsequently filed a motion to correct findings of fact. Following a hearing, the court issued a written order addressing each challenged finding. The court did not substantively change any findings.

¶ 13. Mother argues on appeal that the family court erred by: (1) making findings that were inconsistent with the evidence presented at trial or based on inadmissible evidence; (2) applying an incorrect legal standard to determine if there had been a change in circumstances; and (3) applying an incorrect legal standard to determine what custody arrangement would be in daughter's best interests.

¶ 14. We address at the outset mother's argument that the family court's findings were inconsistent with the evidence presented at trial or were based on inadmissible evidence. In general, we defer to family court findings of fact. *Miller-Jenkins v. Miller-Jenkins*, 2010 VT 98, ¶ 11, 189 Vt. 518, 12 A.3d 768 (mem.). Faced with a motion to modify parental rights and responsibilities, the family court has broad discretion to determine the child's best interests as required by the statute. *Id.* Because of its unique

position as the trier of fact, the family court alone may evaluate the credibility of witnesses and the weight evidence should be afforded in making such an assessment. *Id.* In the highly fact-intensive context of a custody determination, we rely on the family court's determinations of fact and evaluations of credibility. *Id.* We will therefore uphold the court's findings of fact unless they are clearly erroneous, viewing them in the light most favorable to the prevailing party below and excluding the effect of modifying evidence. *Id.* ¶ 12. The findings will stand if any reasonable and credible evidence supports them. *Id.*

■ ¶ 15. Mother challenges two findings, which we review in turn.[1] First, mother argues that the family court incorrectly found that father moved to Missouri to be near family. The court specifically found that "[father's] primary motivation for moving to Missouri is because his wife is from there and her support base is there." It found that "other factors exist but are secondary." Mother moved to correct this finding of fact, but the court declined to do so, explaining that the finding was supported by the credible testimony of both father and father's wife. Father testified that family was "very, very important to us" and that his wife's family was in Missouri. Father's wife testified that daughter had friends and family in Missouri. As noted, we rely on the family court's determinations of credibility and will not overturn findings if credible evidence supports them. The finding that father moved to Missouri to be near family is not clearly erroneous.

¶ 16. Mother also argues that the family court incorrectly found that she does not foster independence in daughter. Mother's primary contention is that the court's finding improperly relied on hearsay testimony from interviews contained in Dr. Hasazi's report. We agree that the court erred in using hearsay statements from Dr. Hasazi's report as substantive evidence to support this finding. Because, however, independent evidence in the record supports the court's overall findings and conclusions, notwithstanding its improper use of hearsay from Dr. Hasazi's report, we conclude that the family court did not err in its ultimate award of primary legal and physical custody to father.

---

[1] Although mother terms it a "finding," she also challenges the court's conclusion as part of its best-interests analysis that father has the better ability to foster a positive relationship and frequent and continuing contact with mother. We address below the family court's application and analysis of the best-interests standard.

■ ¶ 17. By statute, reports of an expert "evaluating the best interests of the child" are admissible in determining parental rights and responsibilities if the expert is available for cross-examination. 15 V.S.A. § 667(b); *Velardo v. Ovitt*, 2007 VT 69, ¶ 35, 182 Vt. 180, 933 A.2d 227. Here, Dr. Hasazi testified and was available for cross-examination, and his report was entered into evidence by stipulation. The expert witness's report was properly admitted as authorized by a rule of evidence and specific statute. See V.R.E. 703; 15 V.S.A. § 667(b).

■ ¶ 18. Contrary to the family court's analysis, the admission of Dr. Hasazi's report does not render substantively admissible the facts forming the basis of his opinions that are not otherwise admissible or admitted into evidence. It is true that in writing his report Dr. Hasazi could rely on facts not admissible or admitted as evidence as long as the facts are of a type reasonably relied on by experts in the field. V.R.E. 703; *Velardo*, 2007 VT 69, ¶ 35. These facts could include hearsay statements. *Velardo*, 2007 VT 69, ¶ 35. In *Velardo*, we explained that "[u]nder controlled circumstances, the evidence forming the basis of the expert's opinion can be admissible on that ground even if it is otherwise inadmissible." *Id.* (citing *State v. Recor*, 150 Vt. 40, 48, 549 A.2d 1382, 1388 (1988), and Reporter's Notes to 2004 Amendment, V.R.E. 703). That is, as we stated in *Recor*, evidence otherwise inadmissible that forms the basis of an expert's opinion may be admissible to demonstrate the basis for the expert's opinion — not for its substance. 150 Vt. at 48, 549 A.2d at 1388.

■ ■ ¶ 19. Dr. Hasazi's use of inadmissible hearsay evidence as a basis for his expert opinion as expressed in his report does not make that hearsay suddenly admissible for its substance. *Id.* Rather, as we clarified in *Recor*:

> Under Rule 703, if an expert relies on the out-of-court statements of another in forming his or her opinion *and* if such statements are of a type reasonably relied on by experts in the particular field, then the statements — even if not independently admissible for their substance — will be admissible for the limited purpose of demonstrating the basis for the expert's opinion.

*Id.* We emphasized there that Vermont Rule of Evidence 703 "is not to be treated as either an auxiliary hearsay exception, or as

a backdoor to an expansive reading of existing hearsay exceptions." *Id.* In the case at hand, the family court's justification for using otherwise inadmissible statements contained within the report was based on the fact that Dr. Hasazi's report was entered into evidence by stipulation and, according to the court, "without any restrictions." This does not overcome the limits of the rule and statute governing the report's admission. V.R.E. 703; 15 V.S.A. § 667(b).

■ ¶ 20. Nonetheless, independent evidence in the record supports the court's finding that mother does not foster independence in daughter. See *Miller-Jenkins*, 2010 VT 98, ¶ 12 (stating that findings will stand if any reasonable and credible evidence supports them). For example, the family court noted that mother had a history of interfering with daughter's schooling, referring back to its 2009 order and that these issues continued to occur. At the hearings for the case at hand, Dr. Hasazi's expert testimony was that, regardless of the number of times that mother visited daughter at recess, it was concerning that mother's presence there bothered daughter and that daughter did not feel comfortable telling mother this. Father testified that mother has continued to leave cards and gifts in daughter's cubby at school, a concern of the court in its 2009 order.

¶ 21. In addition, father's wife testified that mother did not allow daughter to be alone at extracurricular activities when father and his wife were present. Mother's husband also testified that he believed mother would reapply for a teaching position at the high school daughter would attend if she remained in Vermont. Despite the evidence mother cites to the contrary, given the record evidence supporting the court's finding that mother's involvement in the classroom, at recess, and with extracurricular activities was "smothering," we have no reason to overturn it.

¶ 22. We turn now to mother's arguments regarding the legal standards applied by the family court. We review questions of law, such as the correct standard to apply, de novo. *Mitchinson v. Mitchinson*, 173 Vt. 483, 484, 788 A.2d 23, 24 (2001) (mem.). We otherwise defer to the family court's broad discretion in awarding custody. *DeLeonardis v. Page*, 2010 VT 52, ¶ 20, 188 Vt. 94, 998 A.2d 1072. We will uphold the court's custody award "if it reflects reasoned judgment in light of the record evidence." *Id.* (quotation omitted); see *Cloutier v. Blowers*, 172 Vt. 450, 452, 783 A.2d 961,

963 (2001) (stating that reversal is warranted only if trial court's legal conclusions are unsupported by findings).

¶ 23. Mother argues that the court should have considered father's reasons for moving in deciding whether there has been a change in circumstances allowing reconsideration of the custody arrangement. The crux of her argument is that father's motivation for moving is invalid based on the American Law Institute's Principles of the Law of Family Dissolution (2002) (ALI Principles), and that, therefore, father did not meet his burden of showing changed circumstances. We disagree and decline mother's invitation to change the legal standard in this regard.

¶ 24. The statute allows that "upon a showing of real, substantial and unanticipated change of circumstances, the court may annul, vary or modify an order [regarding parental rights and responsibilities] if it is in the best interests of the child." 15 V.S.A. § 668. We have held that several general principles guide a court's evaluation of this statutory test, which requires a threshold showing of changed circumstances before parental rights and responsibilities can be modified based on the child's best interests. *Hawkes*, 2005 VT 57, ¶ 9. In particular, we explained in *Hawkes* that "whether a relocation or other change is substantial enough to meet the threshold must be determined in the context of all the surrounding circumstances, keeping in mind that the effect on the child is what makes a change substantial." *Id.* ¶ 10. We emphasized that when parties share custody and parenting, one party's move to a distant location requires, at minimum, a reassessment of the custodial arrangement and will often necessitate a change in custody. *Id.* ¶ 12.

¶ 25. To further clarify the circumstances in which relocation alone may satisfy the threshold requirement of showing changed circumstances, we adopted § 2.17(1) of the ALI Principles, specifically noting that we were adopting only this particular subsection. *Hawkes*, 2005 VT 57, ¶ 13 n.6. Under § 2.17(1) of the ALI Principles, relocation is a substantial change of circumstances justifying a reexamination of parental rights and responsibilities "only when the relocation significantly impairs either parent's ability to exercise responsibilities the parent has been exercising or attempting to exercise under the parenting plan." Among other relevant factors, the court must consider the " 'amount of custodial responsibility each parent has been exercising and for how long,

the distance of the move and its duration, and the availability of alternative visitation arrangements.'" *Hawkes*, 2005 VT 57, ¶ 13 (quoting ALI Principles § 2.17 cmt. b).

¶ 26. Here, the family court applied the correct legal standard, looking to *Hawkes* and our adoption of § 2.17(1) of the ALI Principles. The court found that a "true co-parenting situation" existed because father had primary legal responsibility for daughter and mother and father shared physical responsibility for her, with daughter residing for four days with mother and for three days with father. In addition, the court considered that father's move to a location hundreds of miles away was intended to be permanent and that no alternative visitation arrangements could approximate the current schedule. The court highlighted that father's move to Missouri meant that daughter's loss of one parent or the other would be substantial. Therefore, the court found that father met his burden of showing a change of circumstances warranting a reassessment of the custodial arrangement. Under *Hawkes*, the court's conclusion that a move by one co-parent to Missouri was a sufficient change in circumstances to reopen the custody arrangement for review was supportable.

¶ 27. Mother contends, however, that the court made a mistake of law when it failed to consider father's "true reason for moving" in determining whether father met his burden of showing changed circumstances. She suggests that father is moving for an invalid reason — "to get away [from mother]" — and therefore the court incorrectly found that father met his burden.[2] To support her claim, she cites § 2.17(4)(a)(ii) of the ALI Principles.

¶ 28. We have not yet adopted § 2.17(4) of the ALI Principles, but more importantly, this subsection does not address the threshold question of changed circumstances, but rather the modification of parenting plans once changed circumstances have been found. Section 2.17(4)(a)(ii) lists "valid" reasons for relocation for purposes of § 2.17(4), which offers guidelines for a court modifying a parenting plan "[w]hen a relocation constituting changed circumstances . . . renders it impractical to maintain the

---

[2] We note that mother's claim regarding father's motivation for moving is contradicted by the family court's finding that father's primary motivation for moving to Missouri is because his wife is from there and her support base is there and that other existing factors are secondary. As discussed above, we do not overturn this finding, which is supported by evidence in the record.

same proportion of custodial responsibility to each parent." ALI Principles § 2.17(4). Lastly, this subsection calls only for a court to consider whether purposes for relocation are valid when "a parent who has been exercising the clear majority of custodial responsibility" seeks to relocate with the child, not when there is a co-parenting situation, such as that found by the court here. *Id.* For all these reasons, the court made no error in its determination of whether changed circumstances existed.

¶ 29. We turn next to mother's argument that the family court erred in failing to consider her argument that, pursuant to the ALI Principles, mother had and should maintain the majority of physical custody. As before, mother relies on portions of the ALI Principles that we have not yet adopted: § 2.17(4)(a) and comment d to § 2.17, which elaborates on § 2.17(4)(a). Section 2.17(4)(a) states that a court "should allow a parent who has been exercising the clear majority of custodial responsibility to relocate with the child if that parent shows that the relocation is for a valid purpose, in good faith, and to a location that is reasonable in light of the purpose."

¶ 30. Mother suggests that the inverse should be applied — a primary physical custodian who is not relocating should continue to determine the child's residence. Again, mother's citation to the ALI Principles does not support her case. The court did not find mother was the primary physical custodian. It found that the parties co-parented daughter and shared custody, even though father had only three days per week to mother's four. Given the change of circumstances and parents' shared custody of daughter, the court was correct to apply the best interests of the child standard upon father's motion to modify parental rights and responsibilities. See 15 V.S.A. § 665 (setting forth best interests of the child standard and factors to consider); *id.* § 668 (stating that if change of circumstances found, court may modify custody order if it is in best interests of child).

¶ 31. The family court's application and analysis of the best interests of the child standard and related factors outlined in § 665 was well within its broad discretion. See *DeLeonardis*, 2010 VT 52, ¶ 20 (recalling that we defer to family court's broad discretion in awarding custody). Of the seven applicable factors, the court concluded that four favored father, one favored mother, and two did not favor either parent.

¶ 32. Mother specifically challenges the court's conclusion that the third factor, "the ability and disposition of each parent to meet the child's present and future developmental needs, favors father." 15 V.S.A. § 665(b)(3). Her argument hinges on her contention that the court's finding that mother does not foster independence in daughter was without support. As discussed, this finding was well-supported by evidence in the record unrelated to the inadmissible interviews contained within Dr. Hasazi's report. We therefore have no reason to overturn the court's conclusion regarding this factor.

¶ 33. In addition, mother challenges the court's assessment of factor five, "the ability and disposition of each parent to foster a positive relationship and frequent and continuing contact with the other parent, including physical contact." Id. § 665(b)(5). The court's conclusion is supported by the court's findings, which are, in turn, supported by the evidence. The court's findings cited Dr. Hasazi's conclusion that father has continued to be more supportive of mother's relationship with daughter than mother has been of father's relationship with daughter. The court quoted Dr. Hasazi's opinion that "some of [mother's] behavior during many of [daughter's] activities may compete with and/or detract from [daughter's] ability to relate to [father] and other family members in a comfortable manner" and that "[t]hese things and others noted previously in the report likely send a message to [daughter] that [father] and his family are less able to support her, understand her, or competently meet her needs than [mother]." (Quotation omitted.)

¶ 34. The court also noted Dr. Hasazi's conclusion that if daughter were to reside with mother during the school year, father's worries about parental alienation would be well-founded. Although mother highlights what she terms the "speculative" nature of these findings, we conclude that they support the court's determination of this factor, which was well within its discretion. The court was aware that the difficulties stemming from mother's behavior regarding father and his family were longstanding, and, if anything, had increased since its last decision on parental rights and responsibilities. Nor does the other evidence cited by mother persuade us that the court acted outside its discretion to reach its conclusion. See Miller-Jenkins, 2010 VT 98, ¶ 12 (stating that we uphold court's findings of fact unless they are clearly erroneous, viewing them in light most favorable to prevailing party below and excluding effect of modifying evidence).

¶ 35. Upon consideration, the court concluded that the one factor favoring mother — the quality of the child's adjustment to her present housing, school, and community, and the potential effect of any change — was significant in the context of this case but, ultimately, not determinative. See 15 V.S.A. § 665(b)(4). Rather, in its discretion, the court concluded that father should be awarded primary physical rights and responsibilities because this would best allow daughter to maintain relationships with both parents and families and develop independence and autonomy. We will not overturn such an award when, as here, it reflects the sound judgment of the family court in light of the evidence.

*Affirmed.*