2015 VT 84

### Stacey Frazer v. James Olson

[127 A.3d 86]

No. 14-205

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.**

Opinion Filed June 26, 2015

Motion for Reargument Denied July 21, 2015

*Sharon L. Annis* of *Buehler & Annis, PLC*, Brattleboro, for Plaintiff-Appellant.

*James Olson*, Pro Se, Brattleboro, Defendant-Appellee.

¶ 1. **Reiber, C.J.** Mother appeals the parent-child contact and property division orders in a final divorce decree that assign her sole parental rights and responsibilities with regard to the parties' children. On appeal, mother argues that the trial court was bound to consider findings of fact made by the presiding magistrate at a temporary hearing and that the court's findings do not support its conclusions. We conclude that at the final hearing the trial court was not bound to consider the findings from the temporary hearing and that its decision regarding parent-child contact was clearly supported by the evidence. Mother's other arguments fail because there is no clear error in the court's findings, and the findings reasonably support the court's conclusions. We affirm.

¶ 2. The parties married in July 2000. During the marriage, mother worked part-time as a special educator at Guilford School.

Father worked full-time as a clinician at Health Care & Rehabilitation Services of Vermont. In 2008, the parties bought land in Brattleboro and built a home where they lived until they separated in December 2011. On December 21, 2012, mother filed for divorce. The parties have two children that were born during the marriage.

¶ 3. After separation, the parties agreed to a parent-child contact schedule. Under this arrangement, father had only one overnight per week with the children. Father's schedule with the children was generally as follows: Mondays and Wednesdays from after school until early evening; Friday from after school until Saturday at noon; and Sunday during dinnertime. Both parents followed this schedule until April 2013.

¶ 4. By order dated April 16, 2013, after a hearing, a magistrate in the family court established temporary parental rights and responsibilities and issued a parent-child contact order in connection with mother's complaint for divorce. In her order, the magistrate looked to the nine statutory factors enumerated in 15 V.S.A. § 665(b) to determine the best interests of the children. As to the sixth statutory factor, the magistrate found mother to be the primary care provider before and after the parties' separation. See 15 V.S.A. § 665(b)(6). She further concluded that the seventh factor — the relationship of the children with any other person who may significantly affect them — favored father. See *id.* § 665(b)(7). The magistrate awarded temporary legal and physical responsibility to mother and put in place a temporary parent-child contact schedule.

¶ 5. The final hearings before a trial judge took place in December 2013 and January 2014. The trial court made the following findings. In raising their children, the parents shared time with them in different ways. Both parents encouraged the intellectual development of their children in a positive and loving manner and shared parental responsibilities. Mother's part-time work schedule enabled her to provide more direct care for the children than could father. The parties agreed that having one parent working part-time allowed the children to have "as much time as possible in the care of a parent, rather than in childcare."

¶ 6. Although both children are in good health, they have "anxious temperaments." The trial court found that mother and father have different approaches to their children's anxieties. Father is able to encourage the children to "take appropriate

risks, to learn from mistakes, and to ask for help when it is needed." In contrast, mother believes that protecting the children "from feeling any anxiety, distress, or sadness . . . will encourage them to develop and learn in a healthy way."

¶ 7. The court carefully considered the § 665(b) factors and found that some factors favored father, some favored mother, and others favored the parents equally. On balance, the court concluded that mother should continue to have primary legal and physical responsibilities for the children. The court crafted a detailed parent-child contact schedule for the parties addressing school year, overnight, summer and holiday visitations, and telephone and email communications.

¶ 8. Finally, the court addressed the property division. The factors enumerated in 15 V.S.A. § 751(b) guided the court in making the property settlement. The court divided the property, including the marital home, mother's 2009 Toyota Highlander, father's 2005 Toyota RAV4, mother's People's Bank IRA, mother's Vermont State Teacher's Retirement account, and father's Vermont State Teacher's Retirement account. The court awarded father sole ownership and possession of the marital residence, including all financial liability for all debt related to the residence. The court also awarded mother a sum of $13,350 "to compensate her share of the equity in the marital home."

¶ 9. On April 25, 2014, mother filed a motion to reconsider the final order, challenging the trial court's findings and the parent-child contact schedule. She argued that the court misconstrued or misheard evidence, and that its conclusions that mother was not the primary caregiver of the parties' daughter and that father was better able to foster a positive relationship were not supported by the evidence. She also argued that the court's findings were at odds with findings made by the magistrate. Mother further argued that those errors contaminated the final order.

¶ 10. The trial court denied mother's motion, reasoning that the parent-child contact schedule minimized the number of transitions and that the evidence supported the court's primary caregiver determination. The court noted that "the family division presiding judge is not bound by the findings of the magistrate" or even the court's own findings at the time of a temporary order. This appeal followed.

¶ 11. First, we address mother's argument that the trial court is bound to consider the findings and conclusions made by a mag-

istrate. Mother argues that the lower court erred when it made new findings of fact as a part of its final order, suggesting the court should have treated the findings of the temporary order as binding.

¶ 12. ■ We have previously concluded that once all outstanding issues are resolved and a court issues a final order, the final order replaces the temporary order. *Camara v. Camara*, 2010 VT 53, ¶ 18, 188 Vt. 566, 998 A.2d 1058 (mem.). The purpose of the temporary order is "consistent with the general law that temporary maintenance orders merge into, *and are superseded by*, the final order." *Id.* (emphasis added) (quotation omitted); see *Thompson v. Pafundi*, 2010 VT 80, ¶ 17, 188 Vt. 605, 8 A.3d 476 (mem.) ("[T]he temporary order . . . was just that: temporary." (citing *Porcaro v. Drop*, 175 Vt. 13, 14, 816 A.2d 1280, 1282 (2002))). Thus, a temporary order is part of an ongoing divorce case, and not a discrete legal proceeding.

¶ 13. Mother bases her argument on a distinction between 15 V.S.A. § 594a and 4 V.S.A. § 462. Comparing these two statutes, mother suggests that findings of fact are binding in the final hearing when a magistrate presides because § 462(a) explicitly requires a magistrate to issue findings, whereas findings of fact are not binding when a judge presides over a temporary hearing because § 594a does not explicitly require a judge to make findings in a temporary order.

¶ 14. ■ Section 462(a) states that "[t]he magistrate shall make findings of fact, conclusions, and a decision and shall issue an order." 4 V.S.A. § 462(a). Section 594a states that "[t]he court . . . may make such [temporary] orders pending final hearing . . . . A prompt hearing will be held, and the evidence shall be recorded by a court reporter." 15 V.S.A. § 594a. Section 594a merely sets out minimal requirements of the procedure for temporary relief.

¶ 15. ■ ■ We "presume the Legislature intended the plain, ordinary meaning of the language," and employ the plain-meaning canon of statutory interpretation. *Ketchum v. Town of Dorset*, 2011 VT 49, ¶ 10, 190 Vt. 507, 22 A.3d 500 (mem.) (quotation omitted). We will read language into the statute only when "necessary." *Id.* (quotation omitted). Nothing in the language of these statutes suggests that findings or conclusions of a magistrate in a temporary order are binding upon the family court when it makes a

final determination. Thus, the language of § 594a and § 462 does not support mother's argument.

¶ 16. ■ A temporary order is designed to provide quick, temporary relief to the parties in between the initiation of the divorce proceeding and the final decree. Importantly, the findings of fact, if any, in a temporary order reflect one point in time concerning the children's situation. The temporary order simply maintains a particular status quo. *Camara*, 2010 VT 53, ¶ 18. Therefore, in making a divorce decree, the trial court may consider, but is not bound by, the findings of fact from a temporary hearing.

¶ 17. ■ Next, mother argues that the findings do not support the trial court's conclusions regarding two of the statutory factors enumerated in 15 V.S.A. § 665(b). We will not question the credibility and weight that the trial court accords such evidence in these matters. *Chickanosky v. Chickanosky*, 2011 VT 110, ¶ 14, 190 Vt. 435, 35 A.3d 132. "On review, we will uphold the family court's findings of fact unless clearly erroneous, and we will uphold its conclusions where supported by the findings." *Camara*, 2010 VT 53, ¶ 10. "We view the findings in the light most favorable to the prevailing party, and only reverse if the court exercised its discretion upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." *Paine v. Buffa*, 2014 VT 10, ¶ 10, 195 Vt. 596, 93 A.3d 90 (quotation omitted). On balance, "[t]he focus of the court's decision must be the best interest of the child, not equity between the parties." *Begins v. Begins*, 168 Vt. 298, 301, 721 A.2d 469, 472 (1998) (quotation omitted).

¶ 18. ■ The first statutory factor challenged is § 665(b)(5), which looks at "the ability and disposition of each parent to foster a positive relationship and frequent and continuing contact with the other parent." 15 V.S.A. § 665(b)(5). This is a "critical statutory factor guiding the court's determination." *Begins*, 168 Vt. at 301, 721 A.2d at 471. The factor recognizes "the principle that the best interests of the child are furthered through a healthy and loving relationship with both parents." *Id.* at 302, 721 A.2d at 472.

¶ 19. ■ The findings support the trial court's conclusion that the fifth statutory factor favored father. The court found that mother opposed increasing contact between the children and father. She opposed father discussing anything of import with the

children without discussing it with her first, believing that communication of any important information "should be her prerogative as the primary parent of the children" even if it related solely to father's life, home, or relationships. In considering the totality of these findings, the court concluded that mother viewed "herself as the primary parent, and the father as an adjunct, rather than an equal or even a partner." We find no error.

¶ 20. ■ Mother also challenges the court's findings regarding the sixth statutory factor: "the quality of the child's relationship with the primary care provider." 15 V.S.A. § 665(b)(6). This factor gives weight to the "continuation of the primary custodian with the weight to be determined by the quality of the relationship." *Harris v. Harris*, 149 Vt. 410, 418, 546 A.2d 208, 214 (1988). In some cases, evidence can support a finding that both parents served as primary care providers. See *Payrits v. Payrits*, 171 Vt. 50, 54, 757 A.2d 469, 473 (2000). Mother argues that the findings do not support the court's determination that, even though mother is the primary care provider for the younger child, neither parent was the primary care provider for the older child. The court noted that both parents shared caregiving responsibilities until they separated in 2011, and that father had nearly every weekend and mid-week contact as well during the separation. Although the court stated that neither parent was the primary care provider of the older child, it also acknowledged that for the past two years the older child has spent the majority of her time with mother, and concluded that the factor favored mother.

¶ 21. ■ Mother challenges a remark in the court's decision denying mother's motion for reconsideration. The court wrote that its "conclusion that neither the plaintiff nor the defendant should be regarded as the primary caregiver for the children was based on all of the evidence at the final hearing." Mother claims that this discord with the final order, wherein the court found mother to be the primary care provider of the youngest child, makes "a meaningful review of the parent-child contact order" impossible. Mother is correct that there is an inconsistency between the final order and entry regarding motion; however, this discord does not affect the legal rights awarded to mother.

¶ 22. The court properly exercised its discretion in concluding that both parents provided care. Mother's fear that confusion created by the language chosen by the court will deprive her of

any future "meaningful review" is baseless. Ultimately, she was awarded parental rights and responsibilities for both children. We fail to see how her rights in that position are diminished as claimed.

¶ 23. ▮ Mother also challenges the court's division of property. She first argues that the court abused its discretion when it did not consider mother's nonmonetary contributions as a spouse in conducting property division. In general, trial courts have "wide discretion within the limits of 15 V.S.A. § 751 . . . in formulating awards of property upon divorce." *Billings v. Billings*, 2011 VT 116, ¶ 11, 190 Vt. 487, 35 A.3d 1030 (alteration in original) (quotation omitted). "The distribution of property is not an exact science . . . ; all that is required is that such distribution be equitable." *Lalumiere v. Lalumiere*, 149 Vt. 469, 471, 544 A.2d 1170, 1172 (1988) (alteration and quotation omitted). Findings will not be disturbed if they are supported by credible evidence, and we will uphold the trial court's conclusions if supported by the findings. *Wade v. Wade*, 2005 VT 72, ¶ 9, 178 Vt. 189, 878 A.2d 303.

¶ 24. ▮ Section 751(b) states that, when making a property settlement, the court "may consider" the enumerated twelve factors, including the "nonmonetary contribution of a spouse as a homemaker." 15 V.S.A. § 751(b)(11). In *Semprebon v. Semprebon*, the plaintiff argued that § 751 mandates that the court make findings for each statutory factor. 157 Vt. 209, 215, 596 A.2d 361, 364 (1991). We denied the plaintiff's argument, holding that any one statutory factor is optional, and explained that the trial court's findings are required only to " 'provide a clear statement as to what was decided and why.' " *Id.* (quoting *Richard v. Richard*, 146 Vt. 286, 287, 501 A.2d 1190, 1190 (1985)).

¶ 25. ▮ Here, mother argues that the trial court abused its discretion when it did not explicitly make findings under § 751(b)(11). The court made findings regarding the length of marriage; health and age of the parties; sources of income; need to award the family home to the spouse with parental rights and responsibilities; and contribution of each to the martial estate. It found that mother spent more time providing direct care for the children than did father, in large part due to her part-time work schedule, and that the parties had agreed it made sense for mother to work half-time while father worked full-time so the children would have as much time in the care of a parent as

possible, rather than in childcare. Although 15 V.S.A. § 751 does not require the court to consider all the factors enumerated therein, the court considered mother's contributions without specifically labeling those findings as homemaking.

¶ 26. ▮▮▮ Finally, mother argues that the trial court mistakenly believed mother was not asking to be awarded the marital residence. When asked at the hearing if she wanted to be awarded the marital home, mother replied, "Well, I want to either be given a reasonable amount of money, . . . so that we either have that home or can have a home." She admitted that it was not "economically feasible" for her to afford to pay for the house by herself. She then asked the court to award her seventy percent of the equity in the home.

¶ 27. The court concluded that "mother is not seeking an award of the marital residence, but simply a division of the equity in the residence, so that she can purchase her own home." Given the evidence, the court was justified in concluding that mother preferred a large percentage of the equity in the home rather than the home itself.

¶ 28. The court made an equitable decision, and the findings support the property division. We affirm its decision.

*Affirmed.*

¶ 29. **Robinson, J.,** concurring. I concur in the result. Mother was awarded sole physical and legal rights and responsibilities for the minor child, and father was awarded parent-child contact three nights per week during the school year, and half of the time during the summer. On appeal, mother challenges the trial court's award of parent-child contact. Most of her argument on appeal focuses on the court's findings and inconsistent statements regarding whether mother was the primary caregiver for both children.[1] Her theory seems to be that because the court erred, or at least made inconsistent findings, with respect to whether to assign to mother the label "primary caregiver," its parent-child contact award was fundamentally flawed.

---

[1] The magistrate initially concluded that mother was the primary caregiver for both children; the trial court concluded that she was the primary caregiver for the parties' younger child and neither parent was primary caregiver for the older child; and on reconsideration the trial court ruled with respect to *both* children that neither parent was primary caregiver for both children.

¶ 30. There is a disconnect between mother's argument and the relief she seeks — reconsideration of the parent-child contact award. In the course of its analysis, the trial court acknowledged the children's positive and loving relationships with both of their parents. In reviewing the statutory factors and awarding legal and physical parental rights and responsibilities to mother, the court concluded that the children's adjustment to their present housing, school and community, and the quality of their relationship "with the primary care-provider" were both factors that favored mother. Discussing their very different parenting styles, the court noted that father's greater ability to set clear limits and to encourage the children to take appropriate risks, to learn from mistakes, and to ask for help when needed would enable the children "to withstand the buffets and bruises that life inevitably brings," and to develop as "healthy, confident people." The court also found father better disposed to foster a positive relationship and frequent and continuing contact with the other parent. For these reasons, although the court did award parental rights and responsibilities to mother, it concluded that they "would benefit from a more equal division of their time" between mother and father.

¶ 31. The trial court did not increase the children's time with father because it was confused about his role as primary caregiver; it did so *despite* the fact that the primary-caregiver factor in the statutory analysis favored mother. It concluded that the children would benefit from greater balance between the parents. Insofar as mother suggests that the court's inconsistent findings about the primary-caregiver factor undermine its parent-child contact award, that suggestion is inconsistent with the court's findings and reasoning, which were expressly forward-looking. I would reject mother's arguments concerning the court's findings as to who was the child's primary caregiver on that basis.[2] I concur with the majority's analysis concerning the court's finding that father was more disposed to foster a positive relationship between the children and their mother, *ante*, ¶¶ 18-19, and concerning the court's property division, *ante*, ¶¶ 23-28.

---

[2] I do not disagree with the majority's conclusion that the trial court is not bound at this stage in the litigation by the magistrate's earlier findings. I would not, however, reach the question of whether and under what circumstances the trial court *may* adopt findings from the temporary hearing. That issue was not briefed in this Court, nor analyzed below.