*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## <u>ENTRY ORDER</u>

SUPREME COURT DOCKET NO. 2013-483

JUNE TERM, 2014

| | | |
|---|---|---|
| Kristen Port | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Chittenden Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| Michael Port | } | DOCKET NO. 648-8-07 Cndm |

Trial Judge: Kevin W. Griffin

In the above-entitled cause, the Clerk will enter:

Mother appeals from an order of the superior court, family division denying her motion to modify father's parent-child contact schedule to facilitate mother's move to Florida. Mother contends the trial court erred in: (1) finding a real, substantial and unanticipated change of circumstances and thus considering the best interests of the children; (2) concluding that the relocation was not in the best interests of the children, and thus denying the motion to modify parent-child contact. We affirm.

The parties divorced in May 2008, and have since engaged in a number of contentious post-judgment proceedings relating to parental rights and responsibilities and parent-child contact. The original divorce decree awarded mother sole legal and physical rights and responsibilities for the parties' three children, who were nine, six, and almost four years old at the time. As the trial court here found, father was awarded "extensive contact" consistent with his work schedule. A pilot with a private company who flies every other week, father was given responsibility for the children for substantial periods when he was not working, resulting in eleven overnights for each twenty-eight day cycle, or about thirty-nine percent of the time. To maintain this schedule and accommodate the children's school and other activities, father continued to reside in the marital home and commute to work in Portsmouth, New Hampshire.

In July 2008, father moved to modify parental rights and responsibilities based on allegations that mother had exposed the children to danger from a violent domestic partner. The court denied the motion, finding that the family was protected from the assailant by his conditions of release. Several years later, in March 2012, mother moved to modify father's visitation schedule, citing concerns about behavioral issues she claimed the two younger children were experiencing while in father's care, and the need to allow the oldest child to enter a residential treatment facility. Father, in response, sought more information about the oldest child's treatment, and filed a counter-motion in June 2012 to modify parental rights and responsibilities based on renewed allegations that mother was exposing the children to domestic violence.

A motion hearing was held in November 2012 and February 2013. Father ultimately withdrew his motion, and the trial court issued a written decision in March 2013, modifying father's visitation schedule to reduce his time with the oldest child while preserving his overall amount of time with the younger children. In its findings, the court noted father's persistent tendency to blame mother for behavioral problems involving the younger children and to minimize the older child's health care issues; the court also noted mother's failure to consistently inform father of issues relating to the children. The court found that both parties had demonstrated the ability to care for the children, while also noting that mother had been in a three-year relationship which had exposed the children to violence in the home. Their post-judgment relationship had been marked by poor communication and mutual mistrust.

Shortly after the court's ruling, in May 2013, mother filed another motion to modify father's contact with the oldest child. The court granted the motion in a brief entry order on July 9, 2013, providing for limited contact and directing that father begin counseling with the child "with the hope of expanding contact." Two weeks later, mother filed a further modification motion, citing for the first time her plan to move to Florida by mid-August 2013. Mother asserted that there were more jobs in Florida for people with her educational background, which included an accounting degree from Champlain College in May 2013, and a master's in health care management which she was currently pursuing. Father opposed the motion, alleging that mother was continuing to employ efforts to separate him from the children. He also sought an order to compel mother to comply with the court's prior order requiring counseling with the oldest child. The court held a hearing on the matter in October 2013, and issued a written decision the following month.

Relying on this Court's decision in Hawkes v. Spence, 2005 VT 57, 178 Vt. 161, the court recognized that a relocation—even by the custodial parent—may constitute a substantial change of circumstances warranting a consideration of the best interests of the child where it "significantly impairs either parent's ability to exercise responsibilities the parent has been exercising or attempting to exercise under the parenting plan." Id. ¶ 13 (quotation omitted). To determine whether a parent's ability in this regard has been substantially impaired, we noted that the court may consider, "among other relevant factors, [t]he amount of custodial responsibility each parent has been exercising and for how long, the distance of the move and its duration, and the availability of alternative visitation arrangements." Id. (quotation omitted).

Applying these factors, the court here found that mother's proposed relocation was a substantial and unanticipated change of circumstances, noting that—while mother holds sole legal and physical custody—father had long exercised substantial parent-child contact, amounting to about thirty-nine percent of the time; that mother was planning a permanent move; and that mother's proposed alternative arrangement for extensive summer visitation was precluded by father's work schedule. Mother rejected a proposed alternative that the children remain with father during the school year and reside with mother in Florida during the summers and holidays.

Turning the best-interests criteria, the court found that while both parties had good relationships with the younger children, father's relationship with the oldest child was strained and would only improve through counseling, which mother had resisted. The court also observed that the children had spent their entire lives in Vermont, in the same community near father's home and amid other family and friends. While noting that neither parent had "excelled" at fostering a positive relationship with the other, the court specifically found that

mother had "little regard for [father's] relationship with the children," and the court was "convinced that the relocation would substantially hinder, if not destroy, father's relationship with the children." The court observed, in this regard, that mother had entirely withheld her intention of moving for an extensive period, and proceeded with her relocation plan without regard to its impact on father or the pending motion.

Although the court further found that the children's bond with mother was stronger than with father, it also found that he had played a significant role in their lives, that he had provided a more stable and settled home than mother, and that the children had developed a relationship with father's partner and her child. There was no evidence concerning the children's relationship with the mother's husband, whom she had married two weeks before the hearing, nor any evidence that they had any significant ties to family or friends in Florida.

In sum, the court concluded that it was not in the best interests of the children to modify the current parent-child contact schedule, finding that mother's interest in moving where her job prospects were better was substantially outweighed by the fact that it would seriously impair the children's relationship with father, that the proposed alternative visitation schedule was unworkable, that the children's roots in Vermont were strong, and that mother had shown little sensitivity to the issues affecting the children's relationship with father. Accordingly, the court denied the motion, as well as a subsequent motion to reconsider. Because mother had indicated to the court that she would not relocate if her motion to modify the parent/child contact schedule was denied, the court did not transfer parental rights and responsibilities to father. This appeal followed.

Mother contends the trial court "should not have reached the issue of the best interests of the children" because she was the custodial parent and had the children for "the bulk of the time," and her motion sought only a change in the parent-child contact schedule. As the trial court correctly ruled, however, Hawkes made clear that the law does not "preclude the family court from finding changed circumstances just because the relocating party is the custodial parent." 2005 VT 57, ¶ 9. The question is whether the relocation will have a significant impact on either parent's ability to exercise parental responsibilities "in the context of all the surrounding circumstances," id. ¶ 10, and we emphasized in this regard that "there is no precise formula" available for making this determination. Id. ¶ 13. Thus, mother's argument here for a "60% rule"—barring a finding of changed circumstances where a parent planning to relocate has physical custody sixty percent or more of the time—directly contravenes the principles of Hawkes. The court here applied the correct legal standard, and we discern no error in its finding that father's contact with the children was extensive, or that the proposed relocation to Florida would significantly impair his relationship with the children.

Mother also argues that the court "should have found that there were legitimate reasons for [the] move." She asserts, more specifically, that it would have afforded her more contact with friends and family in Florida, improved her health, and enhanced her employment opportunities. Mother contends, in essence, that the court misapplied the best-interests criteria.

Our review in this regard is deferential, as the trial court is entitled to "broad discretion" in its application and analysis of the best-interest factors, and its factual findings will be overturned only where clearly erroneous. Chickanosky v. Chickanosky, 2011 VT 110, ¶¶ 31, 34, 190 Vt. 435. We find no basis for disturbing the court's decision under these standards. While the court acknowledged mother's testimony that she had friends in Florida and that her parents

3

planned to move there for part of the year, the record otherwise supported the court's finding that the children have no real ties there as compared to Vermont, where they have lived their entire lives and enjoy strong school, family, and community connections. The court also recognized mother's contention that the move would improve her employment prospects and health, but concluded that these arguments were substantially counterbalanced by other considerations, including in particular the likelihood of the move's destructive effect on father's relationship with the children. The record adequately supports the court's findings and conclusions, and provides no basis to conclude that it abused its discretion in ruling that the proposed relocation was not in the children's best interests.

Finally, mother contends the court "should have continued the matter to allow the parties to present evidence on the best interests of the children." This argument is puzzling, and unavailing, as the trial court made it clear at the hearing that it would be applying the principles of Hawkes to determine the merits of the motion, and mother testified specifically and at length as to the reasons why, in her view, the proposed relocation was in the best interests of the children. We thus find no error, and no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice