VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      25-AP-325

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

APRIL TERM,   2026

| | |
|---|---|
| Sherry Shepard v. Douglas Shepard, Jr.* | } APPEALED FROM: |
| | } Superior Court, Franklin Unit, |
| | } Family Division |
| | } CASE NO. 24-DM-00833 |
| | Trial Judge: Megan J. Shafritz |

In the above-entitled cause, the Clerk will enter:

Husband appeals the family division's division of marital property in the final divorce order.  We affirm.

The family division made the following findings in its order.  The parties married in 1986 and separated in August 2023.  They have two adult children.  Wife is sixty-two years old.  She has various health issues including an ongoing heart condition, difficulty walking and breathing, and hearing loss.  Husband is fifty-nine and has high blood pressure and Type 2 diabetes.

After the parties' children were born, wife stayed home to care for them.  The parties lived at first with wife's mother and then husband's father.  At one point, husband was incarcerated, during which time wife and the children lived in a shack without running water.  Wife eventually found an affordable mobile home lot to rent, and the parties purchased a trailer.  Wife operated a home daycare for approximately ten years to earn money for the family and save the cost of childcare.  Husband worked out of state for part of this time, then returned home to start his trucking business.  Wife sold her vehicle to help husband buy a truck for the business.

Husband has owned the business since 1993.  He formerly had employees but currently works alone.  He owns a dump truck and excavator, which he uses to construct driveways and septic systems and install water lines, primarily on residential properties.  Husband works sixty to seventy hours a week from April to November.  In the winter, construction slows down and husband earns money plowing snow.  During the marriage, wife did the banking and other paperwork, paid invoices, ran errands for parts and other supplies, and performed other office work for the business.  Wife previously worked other jobs outside the home.  However, when

she turned fifty, she stopped working due to her health issues and began receiving disability benefits. Husband expects to work until he turns seventy.

In 2000, the parties constructed the marital home in Swanton. Wife found affordable land for sale and obtained financing to purchase it. Husband did the construction work, except for framing. There is a mobile home located on the property with a separate designated address. However, the lot was never subdivided and is taxed as a single parcel by the town. The parties stipulated that the fair market value of the marital home and property is $465,000. It is subject to outstanding mortgages of $194,448 in husband's name, leaving net equity of $270,552. The monthly mortgage payment is $2268. While the divorce proceeding was pending, wife paid to fix the boiler in the home. The home needs repairs to the roof and a new leach field.

In 2008, husband built a large garage on the marital property for his excavation business. He operates his business from the home and keeps materials on the property. Husband uses the garage to repair his machinery. The parties also store household items in the garage, and wife had access to it during the marriage.

The parties own five properties in New York, which they bought in 2015 as retirement investments. One of the properties is a hunting camp used exclusively by husband, and two other properties are undeveloped lots. The parties stipulated that these three properties had net values of $42,000, $50,000, and $40,000, respectively. The remaining two properties are residential homes that the parties rented for $1000 and $1250 per month. The rent was deposited into a New York bank account and covered the expenses of maintaining the homes. Wife found the tenants, entered into lease agreements, and collected rent for the New York properties. Husband helped with maintenance. The parties stipulated that the two rental properties were worth $193,000 and $150,000.

There was significant conflict during the marriage. Husband left home several times, and wife accused him of having affairs and subjecting her to physical and emotional abuse. The parties separated in August 2023 after husband went to the hunting camp and sent wife a message that he was not coming back. Wife was extremely upset and suffered a heart attack shortly afterward.

Wife lives in the marital home with her mother and D.G., the thirteen-year-old son of their son's ex-girlfriend. The parties have guardianship over D.G. and wife has cared for him since he was three weeks old. D.G. just started high school and is well settled in the community. He has not spent an overnight with husband since the parties separated.

Wife receives monthly rental income of $400 from her mother, who lives in the marital home with wife, and $1000 from her brother, who lives in the apartment over the home's attached garage. The mobile home on the property is rented to husband's niece and her family, who pay $1250 in rent. Wife receives $1408 per month in disability income.

During the marriage, the parties paid household and business expenses from their joint bank account, which held husband's business income, wife's disability income, and the Vermont rental payments. After separation, husband stopped depositing his business income into the account and wife did not have enough money to meet expenses. The court issued a temporary order directing the parties to continue operating their finances as they had during the marriage.

2

However, husband declined wife's requests for funds.  Wife had to borrow money from her family to cover expenses and accrued significant credit card debt, in part from hospital bills resulting from her heart attack.  At the time of the final hearing, she had personal debt of $84,509.  Husband had credit card debt of $7565 for himself and his business.

The parties agreed that the value of husband's business was based on the machinery.  The court found that the business had a net value of $244,390.  Husband did not present evidence of his monthly income.  He testified that the business covered many of his personal expenses such as his vehicle, cell phone, and utilities.  Based on the parties' tax returns, the court found that husband's annual income was at least half of his gross profits, or $59,222.

The court considered the factors set forth in 15 V.S.A. § 751(b) in dividing the marital property.  The court found that the parties were in a long-term marriage of nearly forty years, and noted that in such cases, an equal division of assets is the typical starting point for calculating the property award.  While husband had been the primary income earner during the marriage, wife ran the household and ensured that the family's needs were met.  Wife was resourceful in looking after the family during husband's absences.  She found the property where the marital home was built.  Husband did most of the work to construct the home and business garage, but wife supported these efforts by caring for the parties' children and doing office work for husband's business.  Wife was supported by her brother and mother who lived on the property and helped her maintain it.  She received rental income from them and the mobile home tenants.  Relocation would be disruptive for wife, particularly in light of her health issues, and D.G., who was just entering high school.

The court rejected husband's proposal to award him the marital home and garage and award wife the mobile home.  The court found that it was untenable for the parties to live on the same or neighboring properties given the state of their relationship and the conflicts that arose during their separation.  Further, it was not clear that the mobile home could be legally subdivided from the rest of the parcel.  Although husband argued that the garage was crucial to his work, the business had functioned for nearly twenty years without the garage and could likely do so in the future, and there was no reason to believe husband could not find a new space for his business.

The court therefore awarded wife the marital home, including the mobile home, along with its associated debts and costs.  It also awarded wife the two New York rental properties, explaining that wife had managed these properties and would likely sell them to pay off her credit card debt and help refinance the marital home.  It awarded the business and the three other New York properties to husband.  The net value of the assets awarded to wife was $534,220, or approximately fifty-seven percent of the marital estate, and the net value of the assets awarded to husband was $397,935, or approximately forty-three percent.[1]

---

[1] Husband asked the court to award him the business, the marital home and garage, and the three non-income-producing New York properties, leaving wife the mobile home and the two New York rental properties.  Accepting husband's valuation of the assets, his proposal would have awarded wife fifty-seven percent of the estate, which is what she ultimately received. However, the court found that husband undervalued his business and did not adopt his view that the mobile home alone was worth $200,000, presumably because there was no evidence that it

The court further found that wife did not have sufficient income or earning capacity to sustain the standard of living established during the marriage. It concluded that an appropriate maintenance award would be thirty percent of the difference between the parties' gross annual incomes, or approximately $6480, for eighteen years, totaling $116,640. However, it decided to award property in lieu of maintenance, for several reasons. First, although husband had a greater earning capacity, his business would need to relocate and would therefore likely incur significant additional expenses. Second, husband paid virtually no support to wife during the pendency of the divorce proceeding and the parties' relationship would likely improve if their finances were completely separated. Finally, due to husband's age and expected retirement, it could not award maintenance for the duration recommended by the statute. Accordingly, part of the value of the two New York rental properties awarded to wife was intended to replace maintenance.

On appeal, husband argues that the court abused its discretion in fashioning the property award because it failed to account for his business needs, relied on an incorrect calculation of wife's income, and left him without retirement income or a habitable property. Section 751 of Title 15 requires the family division to "equitably divide and assign" marital property and sets forth twelve factors the court may consider. "[A]n equitable division does not necessarily mean an equal one." Lee v. Ogilbee, 2018 VT 96, ¶ 29, 208 Vt. 400. The court has broad discretion in considering the statutory factors and we will uphold its decision "unless its discretion was abused, withheld, or exercised on clearly untenable grounds." Jakab v. Jakab, 163 Vt. 575, 585 (1995). "The court need not specify the weight given to each factor, but is required only to provide a clear statement as to what was decided and why." Id. "We view the family court's factual findings in the light most favorable to the prevailing party below, disregarding the effect of modifying evidence, and will set aside factual findings only when they are clearly erroneous." Willey v. Willey, 2006 VT 106, ¶ 11, 180 Vt. 421.

We reject husband's argument that the court failed to adequately explain its decision for awarding the marital home and New York rental properties to wife. In considering the § 751(b) factors, "[t]he court need not specify the weight given to each factor, but is required only to provide a clear statement as to what was decided and why." Jakab, 163 Vt. at 585. While the court here did not specifically cite to each factor it considered relevant, the court's analysis clearly implicated several of the statutory factors, including the length of the marriage; the age and health of the parties; the parties' income, sources thereof, and employability; wife's contributions to husband's business; the parties' liabilities and needs; the award of property in lieu of maintenance; and the parties' contributions to the marital estate. The court plainly gave significant weight to wife's contributions to the home, family, and business during the marriage. It was also concerned with the negative impact that relocation would have on wife and her support network, as well as D.G., who was well settled in the home and community and for whom she was primary caregiver.

Contrary to husband's claim, the court explicitly considered his efforts in building the home and garage and his business need for the garage, including his testimony that the garage allows him to make repairs that are crucial for his business. It weighed these factors with the others and concluded that wife's need for the property outweighed husband's. Husband's dissatisfaction with the court's analysis does not demonstrate an abuse of discretion. See

could be legally subdivided from the marital home. It therefore had to award a different combination of assets to reach a roughly equal distribution.

4

<u>Meyncke v. Meyncke</u>, 2009 VT 84, ¶ 15, 186 Vt. 571 (mem.) (explaining that arguments which amount to nothing more than disagreement with court's reasoning and conclusion do not make out case for abuse of discretion).

Further, the court adequately explained why it awarded the New York rental properties to wife. It was wife's idea to acquire the rental properties and she managed them during the marriage. Wife could sell the properties to pay off the credit card debt she accumulated during the parties' separation when husband failed to pay support and to help refinance the marital home. The court further explained that part of the value of the New York properties represented property in lieu of maintenance—that is, the $116,640 it would have otherwise ordered husband to pay over eighteen years. The court's explanation is reasonable and is supported by the findings and evidence. It is also consistent with husband's proposed order, in which he asked the court to award the rental properties to wife.

Husband argues that the decision deprived him of any retirement income and left him with only a camp and two unimproved parcels of land, while giving wife all the habitable properties.[2] As described above, the court provided a reasonable explanation for awarding wife the marital home, including the garage and trailer, and the New York rental properties. Further, the court's award did not appear to create a large disparity in retirement income between the parties. The court found that the rental income from the New York properties was typically just enough to cover the expenses for the properties. Wife would likely have to sell the properties to pay off her debts, leaving both parties in a similar situation with regard to retirement investments. Husband does not challenge these findings, which support the court's decision.

Finally, husband claims that the court's award of property in lieu of maintenance was premised on an erroneous calculation of wife's rental income from the marital home and trailer, requiring reversal. We see no error. As to the rental income from the marital property, wife testified, and the court found, that each month she received $400 in rent from her mother, $1000 in rent from her brother, and $1250 in rent from husband's niece, for a total of $31,800 per year. On the rental income worksheet attached to her affidavit of income and assets, she reported annual insurance, mortgage interest, repairs, and utilities of $11,084, leaving net annual rental income of $20,716, or $1726.33 per month. Combined with wife's disability income payments, she received a total of $3134.33 per month. The court used this amount, which represented wife's actual net monthly income, to calculate her income for purposes of spousal maintenance. While it might have been better for the court to explain the discrepancy in its decision, its approach was rational and consistent with typical practice and is not clearly erroneous.

Similarly, the court's finding that husband paid almost no spousal support during the separation is supported by wife's testimony that husband refused to deposit his business income into their shared account despite the court's temporary order and her requests for financial assistance. While husband asserted that he had put an unspecified amount of money into the account, his testimony was brief and conclusory, and he did not support this assertion with any other evidence. The trial court resolved the conflicting testimony in wife's favor, which it was

---

[2] There was little evidence regarding the habitability of the hunting camp as a year-round residence, other than wife's testimony that it was "a two-bedroom trailer . . . with a nice porch, two sheds," and that husband spent large amounts of time there from October to December. Husband testified that he had been living in an apartment in Swanton for a year and a half.

entitled to do. See <u>Cabot v. Cabot</u>, 166 Vt. 485, 497 (1997) ("As the trier of fact, it was the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence."). Moreover, even if the finding was erroneous, husband fails to explain how the alleged error affected the outcome of the decision. We therefore see no basis to disturb the decision below.

<u>Affirmed</u>.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Michael P. Drescher, Associate Justice